UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

———————————————————————x

In re:                                    :
                                          :
GREGORY PAPADOPOULOS,                      :
                                          :
              Debtor.                     :
                                          :
———————————————————————   :
                                          :
GREGORY PAPADOPOULOS,                      :          **OPINION AND ORDER**
                                          :
              Appellant,                   :          14 Civ. 4750 (ER)
                                          :
       v.                                 :
                                          :
IAN J. GAZES,                              :
                                          :
              Appellee.                    :
———————————————————————x

Ramos, D.J.:

       This is an appeal from an April 15, 2014 Order of the Bankruptcy Court (Grossman, J.),

which vacated the automatic stay imposed under 11 U.S.C. § 362(a) as to a debtor's interest in a

rented apartment in order to allow his landlord to "enforce[] . . . its rights in, and remedies in and

to," that property.  Bankr. Doc. 119 at 1 (Order).[1]   For the following reasons, the appeal is

DENIED and the Order of the Bankruptcy Court is AFFIRMED.

**I.  Background**

       On July 18, 2012, Gregory Papadopoulos ("Papadopoulos") filed for voluntary relief

under Chapter 7 of the United States Bankruptcy Code, 11 U.S.C. § 701 *et seq*., in the United

States Bankruptcy Court for the Southern District of New York.  *See In re Papadopoulos,* No.

12–13125 (JLG) (Bankr. S.D.N.Y. 2012); Bankr. Doc. 1.  Papadopoulos is "a prolific filer in the

---

[1] References to "Bankr. Doc." refer to documents filed in the underlying bankruptcy proceeding, *In re Papadopoulos,* No. 12–13125 (JLG) (Bankr. S.D.N.Y. 2012).  References to "Doc." refer to documents filed in the instant appeal.

courthouses of this Circuit," and is subject to a "filing ban" in the Southern District.
*Papadopoulos v. Gazes*, No. 14 Civ. 3713 (KPF), 2014 WL 3928940, at *1 (S.D.N.Y. Aug. 12, 2014).[2]  Although Papadopoulos' submissions in this action contain numerous outlandish assertions, which he frames as pertinent to the merits of his appeal, *see* Docs. 2, 5, the essential facts are quite straightforward.[3]

Several months before Papadopoulos filed his Chapter 7 petition, on January 18, 2012, he entered into a non-rent stabilized residential lease with I.S.T.A. Management Co. ("I.S.T.A.") to rent an apartment at 210 East 68th Street in Manhattan (the "Property").  *See* Bankr. Doc. 101-1 at 1; Bankr. Doc. 119 at 1.  When Papadopoulos filed for bankruptcy in July of that same year, he was current on his rental payments.  Tr. 2:14-17.[4]  At some point after August 1, 2012, however, Papadopoulos ceased regularly paying his rent, and I.S.T.A, which had not yet been made aware of the ongoing bankruptcy action, commenced non-payment and holdover proceedings against him in New York State Civil Court ("Civil Court").  *Id.* 2:21-3:1; Bankr. Doc. 101 at 7.

On February 21, 2014, after learning of the ongoing bankruptcy proceedings, I.S.T.A. moved in Bankruptcy Court for an order, pursuant to 11 U.S.C. § 362(d), directing Papadopoulos to pay his outstanding post-petition rent or, alternatively, lifting the automatic stay so that I.S.T.A. could seek relief in Civil Court.  *Id.* at 1.  The Chapter 7 Trustee, Ian J. Gazes, filed a Statement of No Objection to I.S.T.A.'s motion on March 10, 2014.  Bankr. Doc. 109.

---

[2] The filing ban does not, however, bar Papadopoulos from bringing this appeal.

[3] The following facts are drawn from the motion to vacate, Bankr. Doc. 101, and Order, Bankr. Doc. 119, from which Papadopoulos appeals, as well as the transcript of the March 18, 2014 hearing upon which the Bankruptcy Court based its Order.  *See* Bankr. Doc. 119 (explaining that the Bankruptcy Court had held a hearing, during which the Court overruled, on the record, Papadopoulos' objection to a lift of the automatic stay).

[4] All citations to "Tr." refer to the transcript of the March 18, 2014 hearing regarding I.S.T.A.'s motion to lift the automatic stay, attached as Exhibit A to this Opinion and Order.

Papadopoulos objected, claiming, inter alia, that I.S.T.A.'s calculations were inaccurate, that I.S.T.A. was "defrauding" the Court, and that I.S.T.A. had insufficiently supported its request for relief.  *See* Bankr. Doc. 112 at 3-5.

A hearing was held on March 18, 2014, at which Papadopoulos first argued that he did not owe I.S.T.A. any money because a substantial security deposit had been applied to his rent, Tr. 7:1-3, but then acknowledged that he was "probably a month" behind.  *Id.* 10:1-10.  I.S.T.A. claimed that Papadopoulos was actually three or four months behind and provided a rent schedule documenting his outstanding payments.  *See id.* 10:3; Bankr. Doc. 101-2.  Additionally, I.S.T.A. explained that it is their practice to "hold" each security deposit until the end of a lease and only then apply it to rent or damages.  Tr. 7:17-23.[5]

During the hearing, Judge Robert E. Grossman informed Papadopoulos that he had a legal obligation to pay all rent incurred since the time of his bankruptcy filing, regardless of what had transpired before that point.  *Id.* 5:18-20.  Concluding, based on I.S.T.A.'s statements and documentation, that Papadopoulos had seemingly failed to pay more than $12,000 in post-petition rent, Judge Grossman found that he had "no alternative but to let [I.S.T.A.] go to Landlord and Tenant Court," *id.* 5:18-22, and had to grant I.S.T.A.'s motion "as a matter of law" unless Papadopoulos was "prepared to cut them a check [that day] for all that [he] owe[d] them." *Id.* 6:21-24.  To the extent that Papadopoulos sought to challenge I.S.T.A.'s demand for payment, Judge Grossman declared that the proper forum for any such defenses and counter-claims would be New York State Civil Court.  *Id.* 11:7-21.

---

[5] Moreover, the rent schedule provided by I.S.T.A. reflected that the amount of Papadopoulos' security deposit was significantly less than the amount he owed I.S.T.A. in post-petition rent as of the March 18, 2014 hearing, rendering the deposit insufficient to protect I.S.T.A.'s interests.  Bankr. Doc. 101-2; *see In re Mad Lo Lo LLC*, No. 09-11911 (MG), 2009 WL 2902567, at *4 (Bankr. S.D.N.Y. May 28, 2009) (suggesting that where a security deposit, held by a landlord, is smaller than the amount of rent due, the landlord is not "adequately protected" from the debtor's nonpayment of his rental obligations).

On April 15, 2014, Judge Grossman issued a one-page order granting I.S.T.A.'s motion to lift the automatic stay. Bankr. Doc. 119. Papadopoulos filed his motion for leave to appeal on April 24, 2014. Bankr. Doc. 120. That motion is unopposed.[6]

## II. Discussion

Section 362(d)(1) of the Bankruptcy Code directs courts to grant relief from the automatic stay "for cause, including the lack of adequate protection of an interest in property of such party in interest . . . ." 11 U.S.C. § 362(d)(1). "The term 'cause' is not defined in the Bankruptcy Code, and whether cause exists should be determined on a case by case basis." *Manhattan King David Rest. Inc. v. Levine*, 163 B.R. 36, 40 (S.D.N.Y. 1993) (citing *In re Sonnax Industries,* 907 F.2d 1280, 1286 (2d Cir.1990)). However, courts have concluded that a debtor's "failure to pay post-petition rent may . . . serve as grounds for lifting the automatic stay." *In re Mad Lo Lo LLC*, No. 09-11911 (MG), 2009 WL 2902567, at *4 (Bankr. S.D.N.Y. May 28, 2009) (citing *In re Taylor*, No. 97 Civ. 5967 (HB), 1997 WL 642559, at *1 (S.D.N.Y. Oct. 16, 1997)).

The Second Circuit Court of Appeals has outlined a set of twelve factors that may be relevant in a court's determination of whether there is "cause" to grant relief from an automatic stay in order to permit a party to commence or continue litigation in another forum.

> (1) whether relief would result in a partial or complete resolution of the issues;
> (2) lack of any connection with or interference with the bankruptcy case;
> (3) whether the other proceeding involves the debtor as a fiduciary; (4) whether a specialized tribunal with the necessary expertise has been established to hear the cause of action; (5) whether the debtor's insurer has assumed full responsibility for defending it; (6) whether the action primarily involves third parties;

---

[6] On June 18, 2014 the Court set a briefing schedule for Papadopoulos' motion, directing that it be filed by July 11, 2014, that opposition papers be filed by July 25, 2014, and that reply papers be filed by August 8, 2014. Doc. 1. Papadopoulos filed his brief on July 11, 2014, Doc. 5, but no opposition papers or reply papers have been filed in this appeal. Nevertheless, because Papadopoulos' motion is moot—a reality that, perhaps, contributed to I.S.T.A.'s decision not to oppose the instant motion—the Court may dispose of it without consideration of any opposing arguments.

(7) whether litigation in another forum would prejudice the interests of other creditors; (8) whether the judgment claim arising from the other action is subject to equitable subordination; (9) whether movant's success in the other proceeding would result in a judicial lien avoidable by the debtor; (10) the interests of judicial economy and the expeditious and economical resolution of litigation; (11) whether the parties are ready for trial in the other proceeding; and (12) impact of the stay on the parties and the balance of harms.

*Sonnax,* 907 F.2d at 1286.  However, "[o]nly those factors relevant to a particular case need be considered, and the Court need not assign them equal weight."  *In re Touloumis*, 170 B.R. 825, 828 (Bankr. S.D.N.Y. 1994) (citations omitted).

Typically, a district court will review a bankruptcy court's discretionary decision to lift an automatic stay using an "abuse of discretion" standard."  *In re Bogdanovich*, No. 00 Civ. 2266 (JGK), 2000 WL 1708163, at *4 (S.D.N.Y. Nov. 14, 2000) (citing *In re Boodrow,* 126 F.3d 43, 47 (2d Cir. 1997); *Sonnax*, 907 F.2d at 1286).  "A bankruptcy court abuses its discretion when it bases its decision on an erroneous view of the law or clearly erroneous factual findings."  *In re Watkins*, No. 06 Civ. 1341 (DGT), 2008 WL 708413, at *2 (E.D.N.Y. Mar. 14, 2008).  In this case, it is unnecessary for the Court to consider whether the Bankruptcy Court abused its discretion or properly lifted the automatic stay in order to permit I.S.T.A. to proceed with its action in Civil Court, because Papadopoulos' appeal is moot.

"It is well-established that an appeal is rendered moot if the appellate court is unable to grant any effective relief."  *Id.* at *2 (quoting *In re Baker,* 339 B.R. 298, 302 (E.D.N.Y. 2005)).  Courts have dismissed as moot bankruptcy appeals where the debtor's primary reason for contesting the lifting of an automatic stay is to delay or stop state-court eviction proceedings once the stay has been lifted and the debtor has been evicted.  *Id.* (citing *In re Gucci,* 105 F.3d 837, 839-40 (2d Cir.1997); *In re Baker,* 339 B.R. at 302-304)).

Here, Papadopoulos himself acknowledges the mootness of his appeal with regard to his effort to avoid eviction, as he has already been evicted.  *See* Doc. 5 at 1 ("[T]his matter is now moot as debtor was thrown out in the street during pendancy [sic] and had to rent a room in Queens.").  Yet Papadopoulos argues that this Court should still reverse the judgment of the Bankruptcy Court in order to prevent I.S.T.A. from pursuing collection of approximately $9,000 in past due post-petition rent, claiming that such collection would "prejudice the rights of existing priority creditors," including his ex-wife, to whom $1,200,000 in maintenance and child support is due.  *Id.* at 1, 3.  He therefore asks this Court to remand this matter to the Bankruptcy Court "with instructions to reinstate the stay with regard to collections and list I.S.T.A. Management as a general creditor whose claims are subject to the final discharge or a dismissal." *Id.* at 3.

However, even if Papadopoulos' appeal were not moot, his portrayal of the relationship between the bankruptcy proceedings and I.S.T.A.'s state court action against him—the status of which is unknown to this Court beyond the fact of Papadopoulos' eviction—is incorrect.  That action involves "a private dispute between the debtor and landlord," which "will not interfere with the administration and ultimate closing of the bankruptcy case, or prejudice the debtor's creditors."  *In re Henderson*, 245 B.R. 449, 455 (Bankr. S.D.N.Y. 2000); *see also Touloumis*, 170 B.R. at 828 (observing that a Chapter 7 debtor's lease "lack[ed] any connection with [his] bankruptcy case" and that even pre-petition eviction proceedings in state court would "have no prejudice on . . . the interests of either the creditors or the trustee") (citing *Sonnax*, 907 F.2d at 1286). Therefore, assuming *arguendo*, that Papadopoulos' appeal is not moot with regard to I.S.T.A.'s ability to collect past-due rent from Papadopoulos in the state court action, this Court cannot conclude that the Bankruptcy Court abused its discretion by lifting the automatic stay.

### III. Conclusion

For the reasons stated above, the appeal is DENIED and the judgment of the Bankruptcy Court is AFFIRMED.  The Clerk of the Court is respectfully directed to terminate the appeal, Doc. 2, to mail a copy of this Opinion and Order to Appellant, and to close this case. Furthermore, the Court certifies, pursuant to 28 U.S.C. § 1915(a)(3), that any appeal from this Opinion and Order would not be taken in good faith; therefore, *in forma pauperis* status is denied for purposes of an appeal.  *See Coppedge v. United States*, 369 U.S. 438, 444-45 (1962).

It is SO ORDERED.

Dated: March 4, 2014
        New York, New York

Edgardo Ramos, U.S.D.J.

# Exhibit A

1

1                        UNITED STATES BANKRUPTCY COURT
2                      SOUTHERN DISTRICT OF NEW YORK

3  IN RE:                    .  Case No. 12-13125-jrg
                          .  Chapter 7
4  GREGORY PAPADOPOULOS,     .

                        .  One Bowling Green
              Debtor.    .  New York, New York  10004
5
  . . . . . . . . . . . . . .  .  March 18, 2014, 12:16 p.m.
6

7   TRANSCRIPT OF HEARING ON MOTION FILED BY ITSA MANAGEMENT TO
     VACATE AUTOMATIC STAY BEFORE THE HONORABLE ROBERT E.
8       GROSSMAN, UNITED STATES BANKRUPTCY JUDGE

9  APPEARANCES:

10  For the Debtor:           Gregory Papadopoulos, *pro se*

11  For ITSA Management:        Livoti, Bernstein & Moraco, PC
                          By:  Robert F. Moraco, Esq.
12                       Of Counsel to Lawrence P. Wolf
                          122 East 42nd Street
13                       17th Floor
                          New York, New York  10168
14                       (212) 551-1164

15  Audio Operator:           Kenishia Braithwaite

16  Transcription Service:     Esquire
                          1384 Broadway, 19th Floor
17                       New York, New York 10018
                          (212) 687-8010
18

19

20

21

22

23

  Proceedings recorded by electronic sound recording;
24  transcript produced by transcription service.

25



2700 Centennial Tower
101 Marietta Street
Atlanta, GA 30303

Toll Free: 800.211.DEPO
www.esquiresolutions.com

2

1                      (Time Noted:  12:16 p.m.)

2                THE COURT:  Okay, appearances, please?

3                MR. MORACO:  Robert F. Moraco, M-O-R-A-C-O.  I am

4    admitted, and I am of counsel to Lawrence P. Wolf, the

5    Movant.

6                MR. PAPADOPOULOS:  And Greg Papadopoulos, Debtor

7    in this case.

8                THE COURT:  What we have on today is a motion for

9    the landlord to either have you pay him or for me to lift the

10   stay so you can go back and fight in L&T Court.

11               Is that correct?

12               MR. MORACO:  Yes, Your Honor.  I'm going to be

13   very brief.

14               The Petition in bankruptcy was filed in July of

15   2012.

16               At that time, Mr. Papadopoulos did not owe us any

17   money.

18               The landlord says he never received notice of this

19   proceeding.

20               After it was filed, Mr. Papadopoulos had a credit

21   in his favor, August 1, but thereafter he began not to pay

22   his rent.

23               Since we were not aware of the -- since my client

24   tells me they were not aware of the existence of this

25   proceeding, they proceeded in Landlord & Tenant Court against



ESQUIRE

2700 Centennial Tower
101 Marietta Street
Atlanta, GA 30303

Toll Free: 800.211.DEPO
www.esquiresolutions.com

1 | Mr. Papadopoulos.

2 | He informed us recently that there was a

3 | bankruptcy proceeding and a stay.  We immediately informed

4 | the Civil Court that the proceeding is stayed.  Mr. Wolf made

5 | this motion.

6 | THE COURT:  Did he have a security up with your

7 | client?

8 | MR. MORACO:  I am uncertain, Your Honor.  I am

9 | uncertain.  It's a non-regulated, non-stabilized lease, and

10 | he probably did.

11 | But I would respectfully point out that all of the

12 | money that he owes us is post-petition.

13 | THE COURT:  How much does he owe you post-

14 | petition?

15 | MR. MORACO:  It's in the papers.  $12,000.00 or

16 | $13,000.00 we claim.  He may dispute it.

17 | THE COURT:  What's his monthly rent?

18 | MR. MORACO:  I think $3,750.00 less a credit.

19 | THE COURT:  Credit for?

20 | MR. MORACO:  Sometimes because they are in the

21 | habit of covering themselves on stabilized leases, when the

22 | market drops, by saying "the real rent is X but I'm providing

23 | you with a credit."  They sometimes do it with non-stabilized

24 | leases.

25 | It makes no sense, but it's $3,750.00 less



ESQUIRE
DEPOSITION SOLUTIONS

2700 Centennial Tower
101 Marietta Street
Atlanta, GA 30303

Toll Free: 800.211.DEPO
www.esquiresolutions.com

```
 1   $1,250.00, so it could be $2,700.00.
 2              THE COURT:  So he hasn't paid for four months, I
 3   gather?
 4              MR. MORACO:  No, he started not paying in August
 5   of 2012, I believe, and he has missed --
 6              THE COURT:  So why wouldn't he owe more than
 7   $13,000.00?
 8              MR. MORACO:  $2,500.00 a month.  The rent is --
 9              THE COURT:  No, $3,700.00 a month you just said.
10              MR. MORACO:  No, it's attached -- I'm sorry, it's
11   attached -- the rent printout is attached to the tables, and
12   I have it on my phone.
13              THE COURT:  Okay, but you're saying he hasn't paid
14   any rent.
15              MR. MORACO:  No, I didn't say that.  I said he
16   began missing payments immediately after he filed.
17              THE COURT:  So some months he paid and some months
18   he didn't pay?
19              MR. MORACO:  I have the schedule on my phone.  I
20   shut it off because, you know, -- I can answer that question
21   directly.
22              THE COURT:  All right, why don't you find out.
23              Mr. Papadopoulos?
24              MR. PAPADOPOULOS:  I can answer some of those
25   questions, Your Honor.  I'm more familiar.
```



1          THE COURT:  What is your monthly rent?

2          MR. PAPADOPOULOS:  The monthly rent is $3,000.00.

3   What he didn't tell you is that --

4          THE COURT:  All right, --

5          MR. PAPADOPOULOS:  -- there's a three month

6   security deposit.

7          THE COURT:  All right, hold on.  Hold on.  Hold

8   on.  We'll get there.  We'll get there.

9          You filed bankruptcy in 2012, correct?

10         MR. PAPADOPOULOS:  I signed the lease with them

11  the beginning of '12.

12         THE COURT:  This is going to work better if you

13  listen to my question and answer it.

14         MR. PAPADOPOULOS:  Yes.

15         THE COURT:  You filed bankruptcy in 2012, is that

16  correct?

17         MR. PAPADOPOULOS:  The middle of 2012, yes.

18         THE COURT:  Okay.  Since that point, forget what

19  happened before, since that point, you need to pay the rent

20  every month.  That's under the law.

21         If you're not, then I have no alternative but to

22  let them go to Landlord & Tenant Court.

23         That doesn't mean in L&T Court they're going to

24  make you pay.  You can have whatever defenses you have over

25  there.


ESQUIRE

2700 Centennial Tower
101 Marietta Street
Atlanta, GA 30303

Toll Free: 800.211.DEPO
www.esquiresolutions.com

1          The only issue is whether I prevent them from
2  going, since you filed in L&T Court an action against them,
3  and they have an action against you.  That's where you should
4  be, not here.
5          MR. PAPADOPOULOS:  It's much more complicated as
6  what it appears.
7          THE COURT:  Not really.  Either you pay every
8  month, or you don't.  If you don't, it's a lease, and on an
9  administrative basis you must pay.
10         I'm not arguing what you owed them, if anything,
11 before.  That's a different question.  But you have to keep
12 your landlord current while you're in bankruptcy.
13         Now, if you believe you have a defense to that,
14 you're free to raise that in State Court.  I'm not precluding
15 that.  I'm just saying my jurisdiction to keep you guys at
16 bay here, is limited by the fact that you haven't paid.
17         Whatever the defenses you have, you can -- that
18 you don't owe them the money, whatever they may be, an L&T
19 Judge over in State Court in New York will listen to those
20 defenses over the next millennium that it takes over there.
21         I'm just saying I can't -- the relief they've
22 requested, as a matter of law, I have to grant unless you're
23 prepared to cut them a check today for all that you owe them,
24 but I don't think you are.  I'm not saying you should, but
25 you're not prepared to do that, are you?

ESQUIRE

2700 Centennial Tower
101 Marietta Street
Atlanta, GA 30303

Toll Free: 800.211.DEPO
www.esquiresolutions.com

1          MR. PAPADOPOULOS:  I don't owe them the money.

2   It's that simple.  They have a security deposit, Your Honor,

3   a substantial security deposit.

4          THE COURT:  You have --

5          MR. PAPADOPOULOS:  And I've got extensive --

6          THE COURT:  I'll find out.  Let's find out.

7          MR. PAPADOPOULOS:  Okay.  Would you --

8          THE COURT:  Hold it, hold it.  He says you have a

9   security deposit that you've applied to his rent, and

10  therefore he doesn't owe you any money.

11         MR. PAPADOPOULOS:  Many more.

12         MR. MORACO:  Security deposit started --

13     (Long pause)

14         MR. MORACO:  This is rent $3,000.00.  It's

15  normally listed on the Schedule when it's held, and I don't

16  see it in front of me.

17         It is entirely possible that he had -- I don't see

18  a security deposit listed.  It's entirely possible that he

19  has a security deposit, but --

20         THE COURT:  And is it possible it has been

21  applied?

22         MR. MORACO:  No.  No, no.  We hold them until the

23  end of the lease and apply to rent or to damages.

24         THE COURT:  So, sir, you're telling me that if Mr.

25  Papadopoulos, whatever the security deposit he put up, still


ESQUIRE

2700 Centennial Tower
101 Marietta Street
Atlanta, GA 30303

Toll Free: 800.211.DEPO
www.esquiresolutions.com

1    exists in your client's hands and is not applied to rent?   So

2    he owes the money, but your security deposit is there, it's

3    an asset that you own?

4             MR. PAPADOPOULOS:   Correct.

5             THE COURT:   Excuse me?

6             MR. PAPADOPOULOS:   That's correct.

7             THE COURT:   Okay.   So you've got to pay them.

8             MR. PAPADOPOULOS:   There's a minimal amount of --

9    Your Honor, if I may be heard, I've done some extensive

10    research on the subject.   I went to the law library, I pulled

11    cases, --

12             THE COURT:   Mr. Papadopoulos, --

13             MR. PAPADOPOULOS:   -- they don't really --

14             THE COURT:   -- you can go to the mountain itself.

15             MR. PAPADOPOULOS:   I'm sorry?

16             THE COURT:   You can go anyplace you want.   The

17    simple answer here is, this is a simple question of law.

18             MR. PAPADOPOULOS:   Okay.

19             THE COURT:   I've read your papers.   And, by the

20    way, the next pleading you file that misspells bankruptcy,

21    we're going to have a problem.

22             Now, you may think it's funny, but you're not

23    going to find me funny.

24             MR. PAPADOPOULOS:   Okay.

25             THE COURT:   We got that?

 ESQUIRE

2700 Centennial Tower
101 Marietta Street
Atlanta, GA 30303

Toll Free: 800.211.DEPO
www.esquiresolutions.com

9

1              MR. PAPADOPOULOS:  Yes.  Will you allow me to

2     argue as to my findings?

3              THE COURT:  I'll let you argue, but I'm telling

4     you --

5              MR. PAPADOPOULOS:  Okay.

6              THE COURT:  -- if you do that again, it's going to

7     -- you're not going to like it.

8              MR. PAPADOPOULOS:  Okay.

9              THE COURT:  Don't do it.

10             MR. PAPADOPOULOS:  Okay.  I'm native Greek and

11    English is not my native language.

12             THE COURT:  There's an expression -- I grew up in

13    the Bronx, okay?

14             MR. PAPADOPOULOS:  I'm sorry?

15             THE COURT:  I grew up in the Bronx in the middle

16    of New York City.

17             MR. PAPADOPOULOS:  Okay.

18             THE COURT:  There's an expression:  Baloney.  You

19    know exactly what you're doing.  Don't do it again.

20             MR. PAPADOPOULOS:  Okay.  I use a word in --

21             THE COURT:  Well, I'll use words, too.  My words

22    will affect you.

23             MR. PAPADOPOULOS:  I'm sorry?

24             THE COURT:  How much does he owes you guy?

25             MR. MORACO:  He does know.  Mr. Papadopoulos,



1  without your credits, how many months are you behind?

2          MR. PAPADOPOULOS:  It's probably right now --

3          MR. MORACO:  Four?  Three or four?

4          MR. PAPADOPOULOS:  -- a month.  A month.  Probably

5  a month.

6          THE COURT:  Okay.  That's $3,000.00.  You're going

7  to give him a check today for $3,000.00?

8          MR. PAPADOPOULOS:  Well, I don't have it with me.

9  I'll have to see if I can raise it.  Obviously I didn't come

10  here with a checkbook.

11          MR. MORACO:  It's all post-petition, Your Honor.

12  He owed us no money when he filed.  This is all post-

13  petition.

14          THE COURT:  But nobody can tell me what he owes.

15  He's admitted he owes something, and he's got to pay that.

16          MR. MORACO:  We have a rent schedule attached to

17  the moving papers.

18          THE COURT:  Just give me two minutes of your

19  argument.  Tell me why I don't lift the stay.

20          MR. PAPADOPOULOS:  First of all, the rent --

21          THE COURT:  As a matter of law, tell me why the

22  Debtor's failure to pay post-petition payments doesn't

23  automatically require me to lift the stay.

24          MR. PAPADOPOULOS:  Okay.

25          THE COURT:  Just explain that to me.



ESQUIRE

2700 Centennial Tower
101 Marietta Street
Atlanta, GA 30303

Toll Free: 800.211.DEPO
www.esquiresolutions.com

1   MR. PAPADOPOULOS:  There is at least five cases

2   that I came across.  Two of them -- two of the cases were

3   decided in this Court just Judge Bernstein and one by Judge

4   Gropper.

5   Judge Gropper went through some extensive

6   analysis.

7   THE COURT:  Okay, sir, you owe $12,397.97 in post-

8   petition rent.

9   MR. PAPADOPOULOS:  I do not.

10   THE COURT:  I don't know whether you do or you

11   don't.

12   MR. PAPADOPOULOS:  Okay.

13   THE COURT:  But the landlord argues you do, and

14   I'm telling you to go to State Court.  Go to State Court and

15   fight with him.  Do anything you want over there.  Keep him

16   at bay for a million years.  I don't care.

17   But it's not here anymore.  Your case remains

18   here, the bankruptcy case remains, they have a right to go to

19   State Court.

20   I've read your cases that have nothing to do --

21   post-petition rents must be paid.

22   MR. PAPADOPOULOS:  Okay.

23   THE COURT:  You owe the money.

24   MR. PAPADOPOULOS:  Have you had a chance to review

25   the cases I cited?



2700 Centennial Tower
101 Marietta Street
Atlanta, GA 30303

Toll Free: 800.211.DEPO
www.esquiresolutions.com

1    THE COURT:  Yes, I read them.  I understand them.
2  I used to argue them.

3    MR. PAPADOPOULOS:  Okay.

4    THE COURT:  I have people who have argued these
5  things.  There is no argument.

6    MR. PAPADOPOULOS:  Okay.

7    THE COURT:  There's one case where a judge found
8  that the person was basically a paraplegic and had to be
9  given time to find a new place.  You are neither.

10    MR. PAPADOPOULOS:  I am.  Yes, sir.

11    THE COURT:  No, I don't think you're a paraplegic.

12    MR. PAPADOPOULOS:  Not paraplegic, but I have a
13  severe hip injury.

14    THE COURT:  Well, find a place with an elevator.

15    MR. PAPADOPOULOS:  I'm sorry?

16    THE COURT:  Find another place with an elevator.

17    MR. PAPADOPOULOS:  I cannot do that overnight.

18    THE COURT:  You're not going to be forced to do
19  anything overnight.  You know how long it's going to take
20  them in L&T Court, knowing you?

21    MR. PAPADOPOULOS:  I'm well familiar.

22    THE COURT:  Okay.  I know you are.

23    MR. PAPADOPOULOS:  I've very experienced in
24  litigation, Your Honor.

25    THE COURT:  Sir, I have a hundred percent



ESQUIRE

2700 Centennial Tower
101 Marietta Street
Atlanta, GA 30303

Toll Free: 800.211.DEPO
www.esquiresolutions.com

1  confidence in you.  I would probably retain you in L&T Court
2  to represent me if I wanted to not get thrown out of a
3  building.
4       MR. PAPADOPOULOS:  I can't, I don't have --
5       THE COURT:  He's buying himself a wonderful
6  exercise fighting you in front of a nice judge down on Center
7  Street, or wherever they are now.  I haven't been there in
8  years, and I know I'm not capable of going there.  It's its
9  own world.  You're aware of it, you understand it.
10      I'm going to give you the opportunity to play with
11 this gentleman over in that play pen.  Not here.  It has
12 nothing to do with the rest of your case.
13      MR. PAPADOPOULOS:  Well, I'm sorry, Your Honor,
14 but research seems to indicate that most of the cases such
15 relief is denied.  I've cited five cases, they were all
16 denied.
17      There are abuses of the system.  What you might be
18 thinking is there are certain abuses.  What typically happens
19 in bankruptcy, somebody falls behind, they get a judgment in
20 State Court, and the next thing the debtor files a bare bones
21 bankruptcy.
22      THE COURT:  Sir, I understand that.
23      MR. PAPADOPOULOS:  It's a case.
24      THE COURT:  There are thousands every day around
25 the country.



ESQUIRE

2700 Centennial Tower
101 Marietta Street
Atlanta, GA 30303

Toll Free: 800.211.DEPO
www.esquiresolutions.com

1          MR. PAPADOPOULOS:  It's not an abusive case.

2          THE COURT:  Of cases, a landlord gets orders up to

3   an order of eviction.  If he has an order of eviction, a

4   bankruptcy doesn't help you.  He gets a judgment, gets

5   whatever, and they know somebody then files and they've got

6   to go through a whole process in the Bankruptcy Court, and

7   then they've got to start again in State Court.

8          That's where we are.  You didn't pay post-

9   petition.  You have to pay post-petition.  I'm not throwing

10  you out of your house, nobody is coming this afternoon -- to

11  my knowledge can come this afternoon.  They have to go and

12  get an order of eviction, which they haven't gotten.

13         You're going to fight it.  It will be what it will

14  be.  Nobody is precluding you.  You'll have a -- you're very

15  well versed in what happens over there.  I'm not making any

16  substantive ruling at all.  I'm not hurting you.

17         MR. PAPADOPOULOS:  I have limitations.  I have

18  severe disabilities, physical, I was even diagnosed with

19  mental disabilities, you know.  I have --

20         THE COURT:  Tell that to the L&T Court.

21         MR. PAPADOPOULOS:  -- I have suffered --

22         THE COURT:  Tell that to the L&T Court.

23         MR. PAPADOPOULOS:  -- Your Honor, do you realize

24  what they did?  I'm sure you know by know that I'm a well

25  known whistle blower of --



ESQUIRE

2700 Centennial Tower
101 Marietta Street
Atlanta, GA 30303

Toll Free: 800.211.DEPO
www.esquiresolutions.com

1      THE COURT:  Sir, I've read your pleadings.  I know
2  that in -- there are a lot of allegations.  I'm not dealing
3  with any substantive issue now.  All I'm dealing with is a
4  motion to lift the stay because the Debtor didn't pay.
5      I'm not saying you're a good guy, I'm not saying
6  you're a bad guy.
7      MR. PAPADOPOULOS:  Well, --
8      THE COURT:  I'm just doing what the law requires
9  me to do.
10      MR. PAPADOPOULOS:  -- let me just argue my
11  position to what your views appear to be, okay?
12      The issues are federal in nature, okay?  His
13  client stabbed me three doors away from the former U.S.
14  Attorney General.  Mr. Michael --
15      THE COURT:  At least you're well protected.
16      MR. PAPADOPOULOS:  I'm sorry?
17      THE COURT:  You're well protected.
18      MR. PAPADOPOULOS:  Your Honor, I have 18 years
19  history dealing with FBI corruption.
20      THE COURT:  Move.  Why do you want to stay there?
21  Move.
22      MR. PAPADOPOULOS:  I would like to move.
23      THE COURT:  So move.
24      MR. PAPADOPOULOS:  I can't while in bankruptcy.  I
25  cannot go sign a contract.

ESQUIRE

2700 Centennial Tower
101 Marietta Street
Atlanta, GA 30303

Toll Free: 800.211.DEPO
www.esquiresolutions.com

1         THE COURT:  No, no, you get another apartment and
2    you want to lease it, put it in front of me.

3         MR. PAPADOPOULOS:  I'm sorry?

4         THE COURT:  If you find another apartment that
5    somebody will rent to you and you think you need me to sign
6    off on that, let me take a look at it.  I'll get you into
7    another -- I'll let you go to another place.  They will let
8    you go to another place, too.

9         MR. PAPADOPOULOS:  These are my efforts to find
10   another apartment.

11        THE COURT:  I'm not the one who just said you want
12   to go to another place, you did.

13        MR. PAPADOPOULOS:  This are my unpaid medical
14   bills after living in that apartment.  Unpaid medical bills,
15   okay?  Injuries suffered, harassment, vandalism, one after
16   the other.

17        THE COURT:  You have the full right.  If you want
18   to sue him, sue him.

19        MR. PAPADOPOULOS:  Your Honor, you might not be
20   familiar with how the City works, but one landlord can easily
21   insure that nobody rents you an apartment.

22        THE COURT:  Okay, guys, here's where we are.
23   There's a motion to lift stay.  The Court is going to grant
24   that motion.

25             Please submit the order, and thank you very much.

ESQUIRE

2700 Centennial Tower
101 Marietta Street
Atlanta, GA 30303

Toll Free: 800.211.DEPO
www.esquiresolutions.com

17

1          MR. MORACO:  That you, Your Honor.

2          THE COURT:  Court is adjourned.

3          MR. PAPADOPOULOS:  Oh, may I leave some papers for

4  you?

5                    (Time noted:  12:31 p.m.)

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

 ESQUIRE

2700 Centennial Tower
101 Marietta Street
Atlanta, GA 30303

Toll Free: 800.211.DEPO
www.esquiresolutions.com

18

1                          CERTIFICATE

2

3

4        I, Randel Raison, certify that the foregoing is a

5   correct transcript from the official electronic sound

6   recording of the proceedings in the above-entitled matter, to

7   the best of my ability.

8   

9   _____        February 24, 2015

10  Randel Raison

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

ESQUIRE

2700 Centennial Tower
101 Marietta Street
Atlanta, GA 30303

Toll Free: 800.211.DEPO
www.esquiresolutions.com